UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GEORGE A. TOLIVER,<br><br>      Plaintiff,<br>  v.<br><br>LAS VEGAS METROPOLITAN POLICE OFFICERS, *et al.*,<br><br>      Defendants. | Case No. 2:17-cv-02612-MMD-DJA<br><br>ORDER |

**I. SUMMARY**

*Pro se* Plaintiff George A. Toliver brings this civil rights action under 42 U.S.C. § 1983 against four officers of Las Vegas Metropolitan Police Department. (ECF No. 10.) Before the Court are two motions for summary judgment. Defendants Sergeant Eva Tanner and Lieutenant Shane Brandon bring one motion for summary judgment (ECF No. 50 ("Detaining Officers' Motion")), and Defendant Officers Jonathan Solis and Joel Tomlinson (ECF No. 51 ("Arresting Officers' Motion")) bring another. Plaintiff opposed both motions (ECF No. 54) and Defendants replied (ECF Nos. 55, 56).[1] Defendants Solis and Tomlinson also moved to seal four exhibits attached to the Arresting Officers' Motion. (ECF No. 67.)

Because the Court finds Defendants Solis and Tomlinson had probable cause to arrest Plaintiff, the Court will grant both motions for summary judgment. The Court will also grant the motion to seal the four exhibits because under NRS § 146.156(5), they are confidential in nature and should not be a part of the public record.

---

[1] Plaintiff also filed surreplies in response to Defendants' replies. (ECF Nos. 57, 59.) Defendants moved to strike the surreplies as procedurally improper, as Plaintiff had not sought leave from the Court to file additional responsive briefs. (ECF Nos. 58, 60.) Per LR 7-2(b), Plaintiff was required to request leave before filing a surreply. Accordingly, the Court will grant Defendants' motions and will direct the Clerk of Court to strike Plaintiff's surreplies.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted. On July 28, 2017, Plaintiff was arrested for allegedly violating his parole. Plaintiff was riding his bicycle down D Street in Las Vegas when Defendants Solis and Tomlinson activated their emergency lights and siren and stopped him. (ECF No. 51-5 at 2.) Defendants informed Plaintiff that they stopped him because he was riding his bicycle on the wrong side of the road and that his bicycle had only reflectors, not lights, as is required by city law. (ECF No. 51-7 at 0:35-1:05.) Defendants then patted Plaintiff down for weapons. (*Id.* at 1:26-55.) Tomlinson asked Plaintiff where he was coming from, to which he responded "downtown," where he had been gambling at the Four Queens casino. (ECF No. 51-8 at 2:45-52.)

At Solis's request, Plaintiff gave him his name and birthdate. (ECF No. 51-7 at 3:15.) Solis then ran Plaintiff's information (*id.* at 3:55-4:30.) While Solis was in the car, Tomlinson continued to talk to Plaintiff, commenting "pretty much everybody is getting freaking killed with all these DUIs, its driving me insane." (ECF No. 51-8 at 4:08-12.) On the bodycam footage, Plaintiff responded, "that's what I have, a DUI, my third one, that's why I can't drive a car." (*Id.* at 4:16.) Plaintiff later denied saying he had consumed alcohol. (ECF No. 51-6 at 4.) Tomlinson asked Plaintiff if he had been drinking. (ECF No. 51-8 at 4:55.) Plaintiff responded, "I had a beer up there, but I ain't been no problem." (*Id.* at 4:56-5:02.) Tomlinson then told Solis that Plaintiff said he had had a beer at the Four Queens. (*Id.* at 5:11.) Solis informed Tomlinson that consuming alcohol was a violation of Plaintiff's parole agreement. (*Id.* at 5:22-24.)

Tomlinson then performed a Horizontal Gaze Nystagmus ("HGN") test on Plaintiff. (*id.* at 5:50-7:18.) Tomlinson told Solis that Plaintiff had scored a four on the HGN test, which Defendants argue would be consistent with an officer's belief that the suspect's blood alcohol content is .08 percent or higher. (*Id.* at 7:30; ECF No. 51-5 at 2.) Solis informed dispatch that Plaintiff had consumed alcohol and therefore was in violation of his parole agreement. (ECF No. 51-7 at 7:45-47.) Tomlinson then told Plaintiff to put his hands behind his back, and Plaintiff asked if he was being arrested. (ECF Nos. 51-7 at

8:25, 51-8 at 8:10.) Solis confirmed with Plaintiff that he was on parole and Tomlinson asked him if he understood a condition of his parole was that he could not purchase or consume any alcohol. (ECF Nos. 51-7 at 8:32, 51-8 at 8:58.)

At the time he was stopped, questioned, and arrested, Plaintiff was on parole. (ECF No. 51-6 at 3.) As a term of his parole, Plaintiff was not allowed to consume, purchase, or possess any alcohol. (ECF No. 51-6 at 3.) Defendants Solis and Tomlinson transported Plaintiff to Clark County Detention Center ("CCDC") where he was booked at the request his parole officer, John Mehalko, Jr,[2] and approval of Defendants Eva Tanner and Shane Brandon. (ECF Nos. 51-12 at 3, 51-13 at 2.)

Plaintiff alleges claims of false arrest in violation of his rights under the Fourth Amendment and false imprisonment in violation of Nevada state law.[3] (ECF Nos. 9 at 3-5, 10 at 4-6.) After screening the complaint, the Court permitted Plaintiff to proceed on his false arrest claims against Defendants Solis and Tomlinson, and false imprisonment claims against Defendants Tanner and Brandon. (ECF No. 9 at 6.) Defendants now move for summary judgment. (ECF Nos. 50, 51.)

## III. LEGAL STANDARD

### A. Summary Judgment

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder

---

[2] Although Plaintiff named Mehalko in this case, he was dismissed for failure to effect proper service pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 46.)

[3] Plaintiff also brought a retaliation claim against Defendant Solis, but the Court dismissed that claim in its screening order, and Plaintiff never filed an amended complaint. (ECF No. 9.)

3

could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

**B.    Seal**

There is a strong presumption of public access to judicial records. *See Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party seeking to seal the records must "articulate[] compelling reasons supported by specific factual findings," *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), which

"outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79. In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure exist when "'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commcn's, Inc.*, 435 U.S. 589, 598 (1978)). However, "there is no right of access to documents have traditionally been kept secret for important policy reasons. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989).

## IV.   DISCUSSION

Plaintiff brings a claim for false arrest against Defendants Solis and Tomlinson (ECF Nos. 9 at 3-4, 10 at 4.) Plaintiff also brings a claim for false imprisonment against Defendants Tanner and Brandon. (ECF Nos. 9 at 4-5, 10 at 5.) Because the Court finds that there is no genuine issue of fact that Defendants Solis and Tomlinson had probable cause to arrest Plaintiff, the Court will grant the Arresting Officers' Motion. Because his lawful arrest negates an essential element of Plaintiff's false imprisonment claim, the Court will likewise grant the Detaining Officers' Motion.

However, the Court will first address an evidentiary issue that led to the order for supplemental briefing.

### A.   Admissibility

As originally submitted, the declaration of Plaintiff's arrest (ECF No. 51-5) and both officers' bodycam footage (ECF Nos. 51-7, 51-8)—which were integral to the Court's decision on both motions—were not authenticated, nor was there any otherwise admissible testimony from Defendants Solis and Tomlinson. The Court issued an order on March 4, 2021 (ECF No. 65) permitting Defendants to supplement their motion under Federal Rule of Civil Procedure 51(c) so that the Court could properly consider all submitted evidence. Defendants Solis and Tomlinson submitted affidavits attesting to the veracity of the bodycam footage and indicating that they would testify in conformity with the statements contained in the declaration of arrest. (ECF Nos. 66-1, 66-2.)

1    The Court finds these declarations sufficient to authenticate the bodycam footage
2 and the substance of the declaration of arrest, and thus will consider them as evidence
3 supporting the Arresting Officers' Motion. But Defendants also argue in their response to
4 the Court's March 4 order that the declaration of arrest would have been admissible in its
5 originally submitted form, without declarations by the arresting officers, under the
6 business records exception or the public records exception to the hearsay rule. (ECF No.
7 66 at 2.) Because the Court finds this issue is important and subject to some apparent
8 confusion, further explanation is warranted.

9    Defendants offer a decision from this district, in which the court stated "[i]t is well
10 established that entries in a police report which result from the officer's own observations
11 and knowledge may be admitted under this exception but that statements made by third
12 persons under no business duty to report may not." *Barren v. Roger*, Case No. 2:11-cv-
13 650-RLH-CWH, 2014 WL 4635710, at *4 (D. Nev. Sept. 16, 2014). The court in *Barren*
14 found the arrest report was admissible under the business records exception because the
15 contents of the report were based on the arresting officers' personal knowledge. The
16 Court disagrees with that finding. Police reports, arrest reports, and declarations of arrest
17 are not business records, and the Court will only consider their admissibility under the
18 public records exception to the hearsay rule. *See United States v. Sims*, 617 F.2d 1371,
19 1376-77 (9th Cir. 1980 (finding Rule 803(6) "inappropriate" for admitting police records);
20 *see also United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086-87 (9th Cir. 2000)
21 ("[D]istrict courts should admit such law-enforcement reports, if at all, only under the
22 public records exception contained in Federal Rule of Evidence 803(8).").

23    Moreover, whether law enforcement reports are admissible under the public
24 records exception may turn on the report's reliability. The Ninth Circuit distinguished
25 between police reports which recorded "routine, nonadversarial matters" and "the
26 adversarial nature of the confrontation between the police and the defendant in criminal
27 cases," finding that the latter is "not as reliable as observations by public officials in other
28 cases." *United States v. Orozco*, 590 F.2d 789, 793 (9th Cir. 1979), *cert. denied*, 439 U.S.

1049). By contrast, records of routine acts are admissible because they are "ministerial, objective, and nonevaluative." *United States v. Gilbert*, 774 F.2d 962, 964 (9th Cir. 1985); *see also United States v. Wilmer*, 799 F.2d 495, 500-01 (9th Cir. 1986) (finding a breathalyzer report was "far removed from the adversarial nature of the on-the-scene investigative report of a crime by a police officer whose perceptions might be clouded and untrustworthy"); *Weiland*, 420 F.3d at 1074 (finding that a "penitentiary packet" of fingerprints and a photograph were admissible under Rule 803(8) because they "do not contain information akin to police officers' reports of their contemporaneous observations of crime that might be biased by the adversarial nature of the report" (internal quotations omitted)); *Pena-Gutierrez*, 22 F.3d at 1086-87 (finding an INS investigator's interview of a potential deportee was inadmissible under Rule 803(8), reasoning "Congress intended to exclude observations made by law enforcement officials at the scene of a crime or the apprehension of the accused" (internal quotations omitted)). While the Court recognizes that the Ninth Circuit has recently noted "police reports are admissible under 803(8) as to the reporting officer's own observations," the Court notes that whether contents of a police report are admissible may depend on the circumstances of the case, the nature of the report, and the contents of the record. *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 692 n.4 (9th Cir. 2021). But even in situations in which police reports or declarations of arrest may not be admissible under this exception to the hearsay rule, authentication ensures the Court can consider that evidence in its resolution of a motion for summary judgment.

B.   **False Arrest**

Plaintiff argues that Defendants Solis and Tomlinson lacked probable cause to arrest him for violating his parole because they did not perform a medical or breathalyzer test. (ECF No. at 4.) Defendants Solis and Tomlinson argue they did have probable cause to believe Plaintiff had violated his parole, and support their position with three main assertions. First, they claim Plaintiff admitted he had consumed a beer. (ECF Nos. 51-5 at 2, 51-8 at 4:55-5:00.) Second, they assert they performed a field sobriety test which indicated Plaintiff was intoxicated. (ECF No. 51-5 at 2.) Third, they claim they observed

that Plaintiff had an odor of alcohol on him when they stopped him and that his eyes were glassy and watery. (*Id.*) To counter this evidence, Plaintiff denies that he ever told Defendants he had consumed a beer. (ECF No. 51-6 at 4.) Plaintiff's denial, without more, does not create a genuine dispute of material fact. Accordingly, the Court will grant the Arresting Officers' Motion.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (citation omitted). Probable cause exists if, at the time of the arrest, "under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1111, 1121 (D. Nev. 2011) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 471-72 (9th Cir. 2007)).

Under Nevada law, "[a]ny parole and probation officer or any peace officer with power to arrest may arrest a parolee without a warrant if there is probable cause to believe that the parolee has committed acts that would constitute a violation of his or her parole." NRS § 213.151(3). "Generally speaking, parolees are entitled to less protection under the Fourth Amendment than probationers." *United States v. Cervantes*, 859 F.3d 1175, 1180 (9th Cir. 2017) (citing *Samson v. California*, 547 U.S. 843, 850 (2006)). Arrest of a parolee may be supported by probable cause when the parolee makes "statements evidencing that he had violated the terms and conditions of his parole." *United States v. Norris*, 325 F. App'x 522, 523-24 (9th Cir. 2009); *see also United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014) (finding defendant's admission that he lacked a permit to carry a firearm provided probable cause to support his arrest); *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (finding defendant's voluntary information that he was a convicted felon in possession of a firearm provided officers with probable cause to search).

Whether Plaintiff told Defendants he had a beer is the only disputed fact remaining in this case. Plaintiff submits no evidence to oppose the Arresting Officers' Motion.

However, Defendants submit Plaintiff's responses to requests for admission, which includes his denial that he ever told Defendants he had a beer. (ECF No. 51-6 at 4.) Defendants submit, among other evidence, their bodycam footage in support of their Motion.

The bodycam footage depicts Plaintiff admitting to an action which violates the terms of his parole agreement. In the bodycam footage, Tomlinson asks Plaintiff "Have you been drinking?" and Plaintiff responds, "I had a beer up there." (ECF No. 51-8 at 4:55-5:00.) Because his account is "blatantly contradicted by the record," the Court therefore finds that Plaintiff's denial that he admitted to having consumed alcohol earlier that evening does not create a genuine issue of fact for trial. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (finding no genuine dispute of fact when a videotape—when there were "no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened"—directly contradicted the nonmovant's testimony). Plaintiff's denial that he told Defendants he had not consumed any alcohol does not create a genuinely disputed fact. Instead, the only question that remains is whether the undisputed evidence shows Defendants had probable cause to arrest Plaintiff for violating his parole.

Under the totality of the circumstances, Defendants had probable cause that Plaintiff had violated a term of his parole agreement. The terms of Plaintiff's parole agreement provide that consuming alcohol is a violation (ECF No. 51-4), Defendants confirmed with dispatch that he was on parole (ECF No. 51-7 at 6:59), and Plaintiff admitted to having consumed alcohol earlier that evening (ECF No. 51-8 at 4:55-5:00). After Plaintiff admitted he had had a beer, Defendants performed an HGN test which indicated Plaintiff had a blood alcohol content of over .08 percent, consistent with someone who had consumed alcohol. (ECF No. 51-8 at 5:50; ECF No. 51-5 at 2.) Based on this information, Defendants had probable cause to believe that Plaintiff had violated a term of his parole agreement and could therefore lawfully arrest him under NRS § 213.151(3).

Plaintiff does not properly renew the argument he made in his complaint that the officers were required to conduct a medically recognized test, such as a blood test or breathalyzer, before arresting him. (ECF No. 10 at 4.) But even if he had, the officers are not required to conduct a medical test to establish probable cause that Plaintiff had violated his parole. Defendants' field HGN test coupled with Plaintiff's admission that he had had a beer earlier were sufficient.

Under the totality of the circumstances, Defendants have shown sufficient evidence that they had probable cause to arrest Plaintiff for violating his parole. Plaintiff fails to provide any genuine dispute of material fact to counter Defendants' showing. Accordingly, the Court will grant the Arresting Officers' Motion.

### C.  False Imprisonment

Defendants Tanner and Brandon also move for summary judgment, arguing that because Defendants Solis and Tomlinson had probable cause to arrest Plaintiff, his subsequent detention was supported by sufficient legal authority. Plaintiff offers the same argument as he did for his false arrest claim—that he was entitled to a breathalyzer or blood test and therefore his imprisonment was unlawful. (ECF No. 10 at 5.) As explained above, Plaintiff was not so entitled, and his arrest was supported by probable cause. Plaintiff's theory for Defendants Tanner and Brandon's liability is only that they signed off on his parole violation report, allowing his parole officer to falsely imprison him. But because he was imprisoned with legal justification, his false imprisonment claim fails, and the Court will grant the Detaining Officers' Motion.

Under Nevada law, "[f]alse imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority." NRS § 200.460(1). "[T]o establish false imprisonment of which false arrest is an integral part, it is necessary to prove that the person [was] restrained of his liberty under the probable iminence of force without any legal cause or justification." *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (internal quotation marks and citations omitted).

1       "[T]he Nevada Supreme Court has clarified that any restraint must be done 'without legal cause or justification therefore' in order for a plaintiff to prevail on a false imprisonment claim.'" *Gonzales v. Nye Cty., Nev.*, Case No. 2:18-cv-1762-JCM-DJA, 2020 WL 759887, at * 5 (D. Nev. Feb. 14, 2020) (quoting *Marschall v. City of Carson*, 464 P.2d 494, 497 (Nev. 1970); *see also Fayer v. Vaughn*, 649 F.3d 1061, 1064-65 (9th Cir. 2011) (finding that when the facts of the case support probable cause for arrest, a false imprisonment claim will necessarily fail); *Riggs v. Nye Cty.*, Case No. 2:17-cv-02627-APG-VCF, 2019 WL 1300074, at *5 (D. Nev. Mar. 21, 2019) (finding that because there was probable cause to arrest, the false imprisonment claim failed "as a matter of law"). "There is no 'false imprisonment' where the accused is imprisoned under valid legal process." *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1144 (Nev. 1983).

      Plaintiff has failed to demonstrate that he was falsely arrested. Put another way, because Defendants Solis and Tomlinson established they had probable cause to arrest Plaintiff, his subsequent detention at CCDC was effected with legal cause and justification. *See Marschall*, 464 P.2d at 497. Accordingly, Defendants Tanner and Brandon properly sign off on his violation report and detained him at CCDC. The Court will therefore grant the Detaining Officers' Motion because Plaintiff's false imprisonment claim fails as a matter of law.

### D.    Arresting Officers' Motion to Seal

      When Defendants Solis and Tomlinson filed their Motion, neither the Motion itself nor any of the exhibits were filed under seal. Defendants Solis and Tomlinson now move to seal four exhibits they attached to their Motion. (ECF No. 67.) The documents include Plaintiff's presentence investigation report (ECF No. 51-1), the violation report (ECF No. 51-12), and two parole violation hearing reports (ECF Nos. 51-16, 51-17). Defendants argue that per Nevada statute, "a report of a presentence investigation or general investigation and the sources of information for such a report are confidential and must not be made a part of any public record." NRS § 176.156(5). Defendants explain that the documents were disclosed in error but that under Nevada law, they should not be a part

of the public record and request the Court seal them now. The Court agrees and will grant the motion to seal.

The Court often has granted motions to seal presentence investigation reports under NRS § 176.156, finding that, under *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), there is a compelling need to protect a Plaintiff's "safety, privacy, and personal identifying information" which outweighs the public interest in open access to court records. *Wilson v. Howell*, Case No. 2:19-cv-00549-JAD-DJA, 2020 WL 1000518, at *2 (D. Nev. Mar. 2, 2020); *see also Benson v. Eighth Judicial Dist. Ct. of the State of Nev.*, Case No. 74498, 2018 WL 1447728, at *1 n.1 (Nev. Mar. 15, 2018) ("While the presentence investigation report may be unsealed for the purpose of providing a copy to petitioner, it may not be made a part of the public record.") (unpublished decision). Even though Defendants redacted some of Plaintiff's personal identifying information in the report, the Court finds the presentence investigation report should not be made a part of the public record.

In light of the Nevada legislature's clear direction that general investigation information should not be made a part of the public record, the Court finds compelling reasons to seal the remaining documents as well. While the presentence investigation report was limitedly redacted, the other three documents have not been redacted at all. (ECF Nos. 51-12, 51-16, 51-17.) Especially in this circumstance, where the type of material would not normally be a part of the public record, the Court finds the public's interest in access to judicial records and a clear understanding of the judicial process does not outweigh the compelling reasons to seal these exhibits. Accordingly, the Court will grant Defendants' motion to seal.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

1     It is therefore ordered that the summary judgment motion filed by defendants
2 Tanner and Brandon (ECF No. 50) is granted.
3     It is further ordered that the summary judgment motion filed by defendants Solis
4 and Tomlinson (ECF No. 51) is granted.
5     It is further ordered that defendants' motions to strike plaintiff's surreplies (ECF
6 Nos. 58, 60) are granted.
7     The Clerk of Court is directed to strike plaintiff's improper surreplies (ECF Nos. 57,
8 59).
9     It is further ordered that defendants' motion to seal (ECF No. 67) is granted.
10    The Clerk of Court is directed to seal the four exhibits (ECF Nos. 51-1, 51-12, 51-
11 16, 51-17) to the motion for summary judgment filed by defendants Solis and Tomlinson
12 (ECF No. 51).
13    The Clerk of Court is further directed to enter judgment in favor of Defendants in
14 accordance with this order and close this case.
15    DATED THIS 17th Day of March 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE